```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF IOWA
 2                         CENTRAL DIVISION
   _____
 3                             )
   UNITED STATES OF AMERICA, )
 4                             )      CASE NO. 4:19-cr-206
             Plaintiff,        )
 5                             )
        vs.                    )      TRANSCRIPT OF
 6                             )      SENTENCING PROCEEDINGS
   EDWARD LEE RAIBURN,         )
 7                             )
             Defendant.        )
 8  _____
 9                                    COURTROOM 265, SECOND FLOOR
                                      U.S. COURTHOUSE
10                                    123 East Walnut Street
                                      Des Moines, Iowa 50309
11                                    Thursday, October 22, 2020
                                      10:18 a.m.
12

13  BEFORE:  THE HONORABLE REBECCA GOODGAME EBINGER, DISTRICT JUDGE

14

15  APPEARANCES:

16  For the Plaintiff:          ADAM KERNDT
                                United States Attorney's Office
17                              U.S. Courthouse Annex
                                110 East Court Avenue, Suite 286
18                              Des Moines, IA 50309

19
    For the Defendant:          ANDREW GRAEVE
20                              Federal Public Defender's Office
                                400 Locust Street, Suite 340
21                              Des Moines, IA 50309

22

23
                      Chelsey Wheeler, CSR, RPR, FCRR
24                       United States Courthouse
                          123 East Walnut Street
25                        Des Moines, IA 50309
```

**E X H I B I T S**

| GOVERNMENT'S EXHIBIT | OFFERED | RECEIVED |
|---|---|---|
| 1    Sealed Exhibit | 22 | 22 |

| DEFENDANT'S EXHIBIT | OFFERED | RECEIVED |
|---|---|---|
| A    Sealed Exhibit | 22 | 22 |

P R O C E E D I N G S

   (In open court with the defendant present.)

   THE COURT:  Thank you.  Please be seated.

   We are here in the matter of the United States of America versus Edward Lee Raiburn.  This is Case No. 4:19-cr-206.  This is the time and date set for sentencing in this matter.  My name, as you know, is Rebecca Goodgame Ebinger.  I'm the district judge presiding.

   If counsel would please identify themselves for purposes of the record, remaining seated and speaking directly into the microphone with your masks on.

   MR. KERNDT:  Adam Kerndt on behalf of the United States.  Seated with me at counsel table is Task Force Officer Christopher Thomas.

   THE COURT:  Thank you.

   MR. GRAEVE:  Andrew Graeve on behalf of Mr. Raiburn, and Mr. Raiburn is seated to my left.

   THE COURT:  Thank you.  And we have with us from the probation office, Probation Officer Kaitlyn Kelly, who is the author of the presentence investigation report in this case.

   Mr. Raiburn, do you recall that a seven-count indictment was filed against you on November 13 of last year here in the Southern District of Iowa?

   THE DEFENDANT:  Yes, Your Honor.

   THE COURT:  Among those seven charges was the charge

of production of child pornography alleged in Count 2, which is
a violation of Title 18, United States Code, Section 2251(a)
and 2251(e).

Do you recall that, sir?

THE DEFENDANT: Yes.

THE COURT: You initially entered pleas of not guilty
to all seven counts of the indictment, and then on June 16 of
this year, you entered a plea of guilty to Count 2.

Do you recall that, sir?

THE DEFENDANT: Yes.

THE COURT: At the time of your plea in front of a
United States Magistrate Judge, you were informed that the
mandatory minimum associated with this single count is 15 years
of imprisonment and the maximum is 30 years of imprisonment.

Do you recall that, sir?

THE DEFENDANT: Yes, ma'am.

THE COURT: The magistrate judge recommended to me
that I accept your plea of guilty and adjudicate you guilty,
and I did so on July 6 of this year.

Do you understand, sir, that you're here today for the
purpose of being sentenced on that plea of guilty?

THE DEFENDANT: Yes.

THE COURT: Do you continue to acknowledge that you
are, indeed, guilty of the crime charged in Count 2, production
of child pornography?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Before I proceed further with the hearing,

3     I need to make sure that you're fully able to participate here

4     today.  Are you currently under the influence alcohol?

5          THE DEFENDANT:  No.

6          THE COURT:  Are you under the influence of any illegal

7     substances?

8          THE DEFENDANT:  No.

9          THE COURT:  Are you taking any prescription

10    medications?

11         THE DEFENDANT:  No.

12         THE COURT:  Are you suffering from any mental health

13    or physical illness or ailment that would make it difficult for

14    you to understand and participate in today's hearing?

15         THE DEFENDANT:  No.

16         THE COURT:  If at any time during this hearing,

17    Mr. Raiburn, you do not understand something I say or you have

18    a question, would you please stop me and let me know?

19         THE DEFENDANT:  Yes.

20         THE COURT:  The most important thing is that you

21    understand the proceedings.

22         THE DEFENDANT:  Yes.

23         THE COURT:  In anticipation of this hearing, the

24    United States Probation Office prepared a presentence

25    investigation report.  I have reviewed that report.  I have

also reviewed the sentencing memoranda filed by the parties and
their proposed exhibits, Exhibit 1 from the defense -- no --
Exhibit 1 from the Government and Exhibit A from the defense.

I have reviewed the docket as a whole, the materials
related to the plea, and the victim impact information that has
been provided to the Court, which consists of bills for some
medical services provided to the victim in this case.

Are there any other materials that need to be brought
to the Court's attention at this time?

MR. KERNDT:  No, Your Honor.

THE COURT:  On behalf of the defense?

MR. GRAEVE:  No, Your Honor.

THE COURT:  Thank you.  So let's turn our attention to
the presentence investigation report.  I have reviewed the
presentence investigation report in this case, as I stated.  I
had one aspect of it that I noted is not accurate as far as the
Court is concerned.

On part D in the sentencing options in paragraph 129,
it talks about the impact of the plea agreement, and it says
that there are none.  The Court doesn't believe that accurately
reflects the record in that, by the plea agreement, there were
six counts that were dismissed.  By dismissing those six
counts, the maximum potential penalty the Court can impose at
sentencing is limited to 30 years.

Do you agree that that's an accurate statement of the

1  record, Mr. Kerndt?

2          MR. KERNDT:  Yes, Your Honor.

3          THE COURT:  And, Mr. Graeve?

4          MR. GRAEVE:  Your Honor, it's correct that the

5  Government has agreed to dismiss the other counts.  The Court

6  is bound to a sentence of no more than 30 years.

7          THE COURT:  Thank you.

8          Mr. Kerndt, have you had the opportunity to review the

9  presentence investigation report on behalf of the Government?

10          MR. KERNDT:  I have, Your Honor.

11          THE COURT:  And does the Government have any

12  outstanding factual objections, corrections, or omissions to

13  bring to the Court's attention?

14          MR. KERNDT:  No, Your Honor.

15          THE COURT:  Thank you.

16          Mr. Graeve, have you and Mr. Raiburn had the

17  opportunity to review the presentence investigation report in

18  this case?

19          MR. GRAEVE:  We have, Your Honor.

20          THE COURT:  Could you make a record as to how you went

21  about reviewing the document with Mr. Raiburn?

22          MR. GRAEVE:  Yes, Your Honor.  When we received a

23  draft of the presentence report over the summer, I was --

24          THE COURT:  Mr. Graeve, if you could move the

25  microphone closer to you.  Thank you.

1    MR. GRAEVE:  Okay.  When I reviewed -- well, when I

2    received a draft of the presentence report over the summer, I

3    went to Polk County Jail with the report and was able to review

4    the report with Mr. Raiburn in one of the interview rooms at

5    the front of the jail.  We weren't able to be in close contact

6    with each other, but we were able to review the report using a

7    phone and plexiglass that was between us.  Then we filed some

8    objections.

9         We received the final draft of the presentence report.

10   When I received the final draft of the presentence report, I

11   discussed that briefly with Mr. Raiburn over an iWebVisit, but

12   then earlier this week, I went to the Polk County Jail and

13   reviewed that final presentence report with him again in the

14   interview rooms at the front of the Polk County Jail.

15        THE COURT:  After that review, I understand there are

16   no factual objections to the report; is that correct?

17        MR. GRAEVE:  That is correct.  No factual objections,

18   but we have identified the two objections we have to the

19   guideline calculations.

20        THE COURT:  And I believe you're objecting to one of

21   the conditions of supervision that's proposed in part G.

22        MR. GRAEVE:  That is also correct.

23        THE COURT:  Thank you.

24        Mr. Raiburn, we've been talking about the presentence

25   investigation report in this case.  Mr. Graeve has explained to

me how you all went over this document.

Do you recall going over the presentence investigation report with Mr. Graeve as he explained?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Have you had a full and fair opportunity to review the information contained in the report?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Mr. Graeve has made some legal objections. He's made some objections to the guideline calculation, and he's objected to, on your behalf, a condition of supervision that's proposed in the report.

Other than that, there's nothing in the report that he has indicated to me is inaccurate or incorrect or needs to be fixed in some way.

Do you understand that, sir?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you agree that the report is factually accurate or correct?

THE DEFENDANT: Yes.

THE COURT: Thank you.

Based upon that record, the Court will rely upon the unobjected to factual information contained in the presentence investigation report for purposes of determining the appropriate sentence to impose in this case.

That brings us to a discussion of the advisory

sentencing guidelines. The guidelines, as we know, are advisory, and the Court treats them as such. The Court is required to accurately calculate the guidelines as one factor to consider in determining the appropriate sentence to impose.

In this case, the guideline calculation begins on page 68 at paragraph 32. In this instance, the base offense level, based upon the offense of conviction of production of child pornography, is a 32.

Paragraph 69, there is a two-level upward adjustment because of the age of the victim. The victim was 12 in this instance at the outset of the engagement with this defendant and was 13 years old during the production.

Paragraph 70 is the upward adjustment for two levels which is based upon the offense involving the commission of a sexual act or sexual contact, and there's two levels up for the adjustment in paragraph 71 based upon the defendant soliciting participation with a minor in sexually explicit conduct using a computer or interactive computer service.

That results in an adjusted offense level of 38. Paragraph 76 is a Chapter 4 enhancement based upon a pattern of activity involving prohibited sexual conduct. That increases the offense level to a 43 with two levels off for acceptance of responsibility.

Does the Government move for the third level?

MR. KERNDT: Yes, Your Honor.

 1          THE COURT:  The Court grants that motion.  The total

 2   offense level is 40.  The defendant is a criminal history

 3   category I.  That results in an advisory sentencing guideline

 4   range of between 292 and 360 months.  The guideline range is

 5   capped at 360 because that is the statutory maximum.  The

 6   supervised release is recommended between five years and life,

 7   and probation is not an option because of the 15-year mandatory

 8   minimum term of imprisonment.  The fine is recommended between

 9   50,000 and $250,000.

10          I understand the Government has no objection to those

11   calculations?

12          MR. KERNDT:  Correct, Your Honor.

13          THE COURT:  Mr. Graeve, do you maintain your

14   objections to paragraphs 70 and 71, the adjustments for

15   commission of a sexual act or sexual contact and for using the

16   computer or interactive computer service to solicit

17   participation with a minor?

18          MR. GRAEVE:  I do, Your Honor.  And, also, I would

19   note one additional thing.  We noted this in our objection

20   letter.  It doesn't affect the guidelines, but the PSR applies

21   a Chapter 4 enhancement in paragraph 76 based on paragraphs 51

22   and 59.  It doesn't matter, but I would just note that

23   objection also.  We concede, though, that the Chapter 4

24   enhancement would apply based on the other paragraphs.

25          THE COURT:  Your position is that -- well, paragraph

1   51 was omitted, so that's not there anymore.  So paragraph 59,

2   with the victim stating that she believed it was her plan for

3   them to have sex and that it was his intention to have sex with

4   her, that that's not relevant to a pattern of activity

5   involving prohibited sexual conduct?

6          MR. GRAEVE:  Your Honor, my reading of the enhancement

7   is that it doesn't include violations of Chapter 117,

8   specifically traveling by Mr. Raiburn, and that, therefore,

9   what's summarized in that paragraph would not support that

10  five-level enhancement.

11         THE COURT:  The Court need not resolve that objection,

12  and it will not consider paragraph 59 for purposes of the

13  Chapter 4 enhancement.  As the defense has acknowledged, the

14  remaining information cited by the probation office is

15  sufficient to support the pattern of activity involving

16  prohibited sexual conduct.

17         The two objections remain, then, paragraphs 70 and 71;

18  correct?

19         MR. GRAEVE:  Correct.

20         THE COURT:  Does the Government wish to present any

21  evidence on those two adjustments?

22         MR. KERNDT:  No evidence, Your Honor.

23         THE COURT:  Thank you.

24         Does the defense wish to present any evidence?

25         MR. GRAEVE:  No, Your Honor.  Our objections are based

1 on what's contained in the presentence report and that the

2 facts that are summarized don't support the enhancements.

3 　　　　THE COURT:　The Government bears the burden of

4 establishing the adjustment.　Would you like to be further

5 heard on those adjustments, Mr. Kerndt?

6 　　　　MR. KERNDT:　Just briefly, Your Honor.　The Government

7 does bear the burden on these guideline enhancements by a

8 preponderance of the evidence.　We respectfully suggest to the

9 Court that the facts that are unobjected to throughout this

10 extensive presentence report, coupled with the guidelines and

11 the case law that the Government cited, support these

12 enhancements by a preponderance of the evidence.

13 　　　　I will rely upon the Government's sentencing memo

14 primarily for this, Your Honor.　I will say the enhancement for

15 two levels for use of a computer to solicit participation with

16 a minor seems to plainly apply just reading the guideline

17 itself.

18 　　　　With respect to the other two-level enhancement, it's

19 a bit more involved, which is why I spent a bit more time in my

20 sentencing memo on that, and that's the enhancement for if the

21 offense involved the commission of a sexual act or sexual

22 contact.

23 　　　　I laid out two different avenues by which the Court

24 can find that two-level enhancement, one being that there was

25 in-person sexual acts and sexual contact in Oklahoma.　It's the

1  Government's position that that contact, which occurred in June

2  and July of 2019, are relevant conduct to the offense.

3  THE COURT: Mr. Kerndt, are you aware of what the age

4  of consent is in Oklahoma?

5  MR. KERNDT: At one point in time, I was, Your Honor.

6  I do know that it is above 12 years of age. I want to say 14,

7  but it could be higher than that, Your Honor, so it is -- she

8  was not the age of consent.

9  THE COURT: Thank you.

10  MR. KERNDT: So the Court can find it based upon the

11  relevant conduct. But even if the Court did decide that the

12  in-person contact in Oklahoma wasn't relevant conduct, it still

13  plainly applies. I cited the four different circuits who have

14  rendered opinions that are in support of an enhancement in this

15  situation for sexual contact.

16  I won't go over exactly the intricacies of that. I

17  will simply say that we believe it applies. To the extent that

18  this is an issue of first impression in this circuit, we would

19  ask the Court to adopt the four other circuits cited by the

20  Government and apply these two levels.

21  THE COURT: Thank you, Mr. Kerndt.

22  Mr. Graeve?

23  MR. GRAEVE: Thank you, Your Honor.

24  I'll address the enhancement in paragraph 71 first

25  because I agree with Mr. Kerndt that the Court should look to

the language in the enhancement, but in my reading of that

enhancement under (b)(6)(B)(ii) is that it, one, requires that

there be a purpose of producing sexually explicit conduct, that

person --

THE COURT: Or --

MR. GRAEVE: Or --

THE COURT: Or live streaming; correct?

MR. GRAEVE: Or for the purpose of transmitting such

material live; correct.

THE COURT: Those are alternatives.

MR. GRAEVE: Yes, they are. I recognize that. Two,

using a computer in the cell phone is, we recognize, a

computer. Three, to solicit participation with a minor. And

the keywords are "participation with." Four, in sexually

explicit conduct. And sexually explicit conduct is defined by

2256(2) as it says in the notes.

"Participation with," our position is that it cannot

occur by being apart. And if the Court disagrees with that, as

the Government is arguing that that's not true, that you can

participate with someone in sexually explicit conduct over the

computer services or through live stream or through text

messages, it still needs to be "participation with."

And looking through the facts as they're summarized in

the paragraphs identified in paragraph 71, there is not

"participation with" either the victim or Mr. Raiburn in the

1  sexually explicit conduct during what is the offense and

2  relevant conduct.

3       I disagree with the Government that relevant conduct

4  extends past the point when Mr. Raiburn first travels to Iowa

5  to exchange the cell phone, to give a cell phone to the victim.

6  And I --

7       THE COURT:  Engaging in unlawful sexual activity with

8  a minor who you later film weeks later is not relevant to the

9  production of child pornography?

10      MR. GRAEVE:  That is not part of the preparation for

11  production of child pornography.  The preparation doesn't

12  begin, as we stated in our sentencing memo, until the cell

13  phone is exchanged.  And the Court --

14      THE COURT:  The sex acts which are necessary to have

15  child pornography are not in preparation for the production of

16  child pornography?  The cell phone is only one piece of child

17  pornography.  If he only had a cell phone, he could not engage

18  in child pornography.  The sex acts would have to be filmed,

19  and the second piece of that in terms of the engaging in sexual

20  activity unlawfully with a 12- and 13-year-old girl would seem

21  to be part of the preparation for the actual act of filming

22  those sex acts.

23      MR. GRAEVE:  And I understand the Court's position,

24  and the point that the Court is making on this.  Our position

25  is that the preparation for production offense --

1         THE COURT:  Production of child pornography.

2         MR. GRAEVE:  Production of child pornography, even if

3    there are sexual contacts, sexual acts that occurred before,

4    months -- and this is months -- a month before the victim is

5    moved to Des Moines, that those are not part of the preparation

6    for this production of child pornography offense.

7         THE COURT:  I understand your position, Counsel.

8         MR. GRAEVE:  And I would rely on the sentencing brief

9    when it comes to that.

10        If we review what actually occurred in Des Moines,

11   there is no participation with a minor in sexually explicit

12   conduct while the minor is in Des Moines.  The facts don't

13   support that, as I've summarized in the sentencing memorandum.

14        I would like to address the FaceTime videos that the

15   Government cites as justification for this enhancement.  The

16   enhancement requires that there be sexually explicit conduct,

17   and that is defined in 2256(2).  It does not include --

18        THE COURT:  Mr. Graeve, you've got to be in front of

19   the microphone.

20        MR. GRAEVE:  Sorry.

21        There is no evidence that what was on these FaceTime

22   videos included sexually explicit conduct, and the Government

23   hasn't pointed to any.  So that shouldn't be the justification

24   for the enhancement in this case.

25        When it comes to the enhancement in paragraph 70,

1   whether the offense involved the commission of a sexual act or

2   sexual contact, again, I would rely on my sentencing memo.  We

3   have briefed this, the Government has briefed this.

4           Our position is that "sexual act" doesn't apply here

5   as it's defined, and "sexual contact," as that term is defined,

6   doesn't apply here and that the relevant conduct, again, is not

7   extended -- it shouldn't extend to the period before the

8   beginning of August or the end of July.

9           Your Honor, I can answer any questions the Court has

10  on these enhancements, but I believe that we have submitted

11  what our positions are in the sentencing memorandum.

12          THE COURT:  Thank you, Mr. Graeve.

13          So as has been acknowledged, the Government bears the

14  burden of establishing both of these contested adjustments by a

15  preponderance of the evidence.  There is no factual contest

16  here.  The facts are admitted, and the Court can rely upon that

17  unobjected to factual information for purposes of determining

18  the appropriateness of these guidelines.

19          As was acknowledged by the defense, because the

20  defendant qualifies for the upward adjustment under Chapter 4

21  for engaging in a pattern of sexual activity involving

22  prohibited sexual conduct, the adjustments are somewhat

23  academic.  Regardless, the Court will address the legal issues

24  because the defendant has raised them and because of the fact

25  that they reflect how the Sentencing Commission judges the

1   seriousness of the offense conduct here aside from the pattern

2   that results in the adjusted offense level in the prohibited

3   sexual conduct pattern enhancement.

4        So the first one we'll talk about is

5   2G2.1(B)(6)(b)(ii), the use of a computer or interactive

6   computer service.  As is acknowledged by the defense, the cell

7   phone used by the defendant is a computer for purposes of this

8   adjustment.  It is also -- the phone that was given to the

9   victim is a use of a computer service as well.

10        The question before the Court is whether, for the

11  purpose of producing sexually explicit material or for the

12  purpose of transmitting such material live, the offense

13  involved the use of a computer or interactive computer service

14  to solicit participation with a minor in sexually explicit

15  conduct.

16        First, turning to the facts in regards to each of the

17  separate parts of this adjustment, the use of the computer is

18  demonstrated twofold:  One, by the defendant's use of a cell

19  phone and, two, by the use of the cell phone by the child.

20  This child only had the cell phone because the defendant gave

21  it to her, and he gave it to her for the explicit purpose of

22  continuing a sexual relationship that had caused the victim's

23  family to have her leave the state of Oklahoma, so certainly

24  the use of the computer or interactive service device is

25  demonstrated in this case.

Third, to solicit the -- excuse me.  Second, to solicit participation with a minor in sexually explicit conduct.  Paragraph 23 in the presentence investigation report shows that the defendant asks over the phone for the victim to video chat with him in the shower.

"I want to video chat with you soon.  You got me hard as hell."  The context of that statement indicates that he wants to engage in the video chat for purposes of his sexual gratification.

Paragraph 29 provides more concrete evidence of the engagement in sexually explicit conduct.  Paragraph 29 begins with, in subsection iii, the victim stating, "I'm getting ready for a shower."  The defendant asks for five minutes and then says he's ready when you are.

The presentence report helpfully notes that the contact ceases at 10:08 p.m. and then restarts at 10:48.  The defendant asks the victim if she saw him cum.  "Yes, I am happy for you," was the response.  This indicates that the defendant masturbated while engaged in a FaceTime video chat with the victim.  The definition of "sexually explicit conduct," as set forth in 2256(2)(A)(iii), specifically lists masturbation.

Now, the question is whether or not this is participation with the victim.  We know that both individuals were engaging in sexual activity with themselves while they were on the video chat in this instance.  The defendant

indicates that the victim was also engaging in some sort of
masturbation by saying "I wish you would of" in the context of
reaching climax or orgasm.  And then he asks why not.

And then he says, "Are you embarrassed to play with
yourself in front of me?"  "No.  I just miss you playing with
me."  So the context here is clear that this is an engagement
in explicit sexual conduct by two people.

Now, the defense raises a question as to whether or
not this is participation with a minor.  We have all learned in
the past few months what participation over the video in court
encompasses.  When I have a hearing in court with an attorney
who is appearing by video, that attorney is participating with
me in that hearing.  When a child has a Zoom piano lesson, that
child is participating with the teacher.

It's unfortunate that we have come to know that online
video sexual gratification with children is occurring far too
frequently, but there is no question that the individual on one
side of a video connection who is watching, engaging with, and
participating with the minor who is engaging in conduct as well
is participating with that minor.

And these phones were used for the purpose of
transmitting the material live.  The fact that it was not saved
for commemoration does not undermine the fact that the
guidelines recognize that live transmission of material is
sufficient.  The objection to the guideline enhancement is

1    overruled.

2         The next question is whether or not this offense

3    involved the commission of a sex act or sexual contact under

4    2G2.1(b)(2)(A).  There are multiple ways in which this

5    adjustment would apply, and the Court finds it applies for all

6    of those reasons.

7         First, I disagree with the defendant's limited

8    interpretation of relevant conduct for the production of child

9    pornography.  In this instance, the relevant conduct began when

10   the defendant was grooming this child for production of child

11   pornography by engaging in unlawful sexual contact with the

12   child.

13        The information contained in the presentence

14   investigation report and in the Government's Exhibit 1 -- I

15   didn't ask at the outset.

16        Any objection to A, Mr. Kerndt?

17        MR. KERNDT:  No objection, Your Honor.

18        THE COURT:  Any objection to 1?

19        MR. GRAEVE:  No, Your Honor.

20        THE COURT:  Both of those exhibits are admitted.

21        MR. KERNDT:  Your Honor, can Government's 1 and A be

22   admitted under seal?

23        THE COURT:  Yes, of course.

24        The Exhibit 1 demonstrates that these sex acts were

25   engaged in in Oklahoma and that -- obviously, there's a

plethora of material in the presentence investigation report

that also supports that the defendant engaged in sex acts with

this child in Oklahoma.  In the same way that I just stated in

questioning Mr. Graeve, the engagement in those sex acts with

this child was in preparation for or of the production of child

pornography.

The fact that the means of making that pornography, in

terms of the phone had not yet been delivered, does not

undermine the fact that a necessary piece of child pornography

is the sexual acts that the children engage in and that the

defendant knew that the phone would facilitate that, simply

because of the fact that he had already engaged in the sexual

acts with this child.  So that is relevant conduct, and it

is -- the offense did involve a conviction of a sex act.

But that isn't necessary here because there was also

sexual contact.  The parties indicated that this was a question

of first impression for the circuit.  It is not a question of

first impression for this Court.  The Court went back over my

records in terms of the child pornography sentencings that I

have had, and I have previously found under similar facts that

a request for a child to engage in touching of their genitals

or engaging in other sex acts by a defendant qualifies for this

adjustment.

The case in which I made that finding was

United States versus Jordan Adolfo Turner, Case

1  No. 4:16-cr-135.  That case was not appealed, but I did

2  previously make that -- the objection to the application of

3  this in a similar context.  In that instance it was a defendant

4  who asked boys to masturbate for him on camera.  The objection

5  was overruled, and that case was not appealed.

6          So in terms of this application here, the Court does

7  find that the decisions set forth in *United States v. Shafer* in

8  the Sixth, *United States v. Pawlowski* in the Third,

9  *United States v. Aldrich* in the Eleventh, and the Second

10 Circuit's opinion in *Dean* are all well-reasoned in that there

11 is no requirement that there be the contact of a different

12 person and that the contact by the victim in this case for the

13 defendant's sexual arousal or gratification is sufficient for

14 sexual contact to occur.

15         I note that the defense relied upon *United States v.*

16 *Starr*, which was a Northern District of Iowa opinion from 2007.

17 That was well before any of these cases were decided that these

18 circuits have given us additional guidance.

19         I also note that the *Shafer* adjustment was not

20 appealed.  In that instance, the defendant was sentenced to 720

21 months without the adjustment, and the Government did not

22 appeal its denial.

23         The Court in that instance also did not discuss sexual

24 contact but only discussed sexual act.  It was distinguished by

25 the Sixth Circuit in *Shafer*.  And, additionally, *Shafer* is a

1    Third Circuit case -- excuse me -- a Sixth Circuit Case.  The

2    district court in *Starr* relied upon a Third Circuit case that

3    dealt with the issue in the context of sexual contact under a

4    different guideline.  And the Third Circuit has since held in

5    *Pawlowski* that in this context sexual contact is not required

6    to be between two people based upon the text of the statute.

7           For all of these reasons, the Court finds that the

8    facts here support the adjustment under 2G2.1(b)(2)(A), and so

9    the objection is overruled.

10          Any additional record in regards to the guideline

11   enhancements rulings by the Court?

12          MR. KERNDT:  No, Your Honor.

13          THE COURT:  From the defense?

14          MR. GRAEVE:  No.  We just maintain our objections,

15   Your Honor.  That's it.

16          THE COURT:  Thank you.  The objections' maintenance is

17   noted for the record.

18          So the Court will look to that advisory guideline

19   range as previously stated for purposes of determining the

20   appropriate sentence to impose in this case.

21          I don't believe either party sought a traditional

22   departure; is that correct?

23          MR. KERNDT:  Correct.

24          MR. GRAEVE:  Correct, Your Honor.

25          THE COURT:  That brings us to the ultimate question in

1    the case, which is the appropriate disposition.

2         Does the United States wish to present any evidence

3    for the Court's consideration as to disposition?

4         MR. KERNDT:  No evidence, Your Honor.  We do have

5    victims who would like to be heard.

6         THE COURT:  Thank you.

7         Does the defense wish to present any evidence?

8         MR. GRAEVE:  No evidence other than what we've already

9    submitted, Your Honor.

10        THE COURT:  Thank you.  At this time the Court will

11   hear from the victims of the offense.

12        MR. KERNDT:  Thank you, Your Honor.  We have three

13   victims who would like to be heard, Your Honor.  The first, I'm

14   going to read the statement that she provided this morning, and

15   this is a statement provided by the child victim's mother, D.N.

16        "How has your child been emotionally affected by this

17   crime?"

18        THE COURT:  Mr. Kerndt, I'm going to ask you to take

19   off your mask for this portion of the proceeding so we can hear

20   you accurately.

21        MR. KERNDT:  Thank you very much, Your Honor.

22        "How has your child been emotionally affected by this

23   crime?

24        "She was affected emotionally.  K.N. has went to

25   therapy for the last year working hard to overcome this.  She

has made wonderful progress and now understands it is not her fault.  She still struggles with it from time to time."

"How has this crime affected you, your family, and those close to your child?"

"It has made me trust people a lot less.  I never thought anything like this would happen to my family.  It has caused a lot of stress, anxiety, and loss of sleep.  I have been talking to a therapist monthly working on it.  It is so hard to see your child suffer and blame herself for something a grown man caused.  It was painful to watch her struggle and punish herself.  It was hard hearing her say she is worthless.  He deserves to rot in prison."

That is the end of the statement by the victim's mother, Your Honor.  We now would like to provide the opportunity for Ms. G.F. to provide a statement to the Court.  Ms. G.F. is the child victim's grandmother who she was living with in Oklahoma.

THE COURT:  Thank you.

Ma'am, if you would please come forward.  You can go this way.

MR. KERNDT:  Would it be acceptable, Your Honor, if she sat here in front of the microphone?

THE COURT:  That's fine.

G.F.:  Thank you.  I've sort of put this off because it's really hard to deal with, so my statements are not written

```
 1   out, and they're all disorganized.

 2            THE COURT:  Ma'am, I know this is difficult for you.

 3            G.F.:  Yeah.

 4            THE COURT:  If you would please take your mask off.

 5   Your support person who is next to you can keep her mask on.

 6   Just take a deep breath, speak slowly and clearly so that I can

 7   understand the very important things that you have to say.

 8            G.F.:  It is very important; otherwise, I wouldn't be

 9   sitting here.

10            THE COURT:  Thank you, ma'am.

11            G.F.:  I don't even know where to start.  My

12   granddaughter was severely emotionally affected by the choices

13   made by Edward Lee Raiburn.  She trusted him as the father

14   figure that he had never ever had, and you took advantage of

15   that.  You destroyed her and me both and all of us.  You

16   destroyed us.  I trust no one.  I don't even trust myself

17   anymore because how could I have allowed this to happen to my

18   granddaughter?

19            But I've got to tell you I had just lost -- I had been

20   taking care of my father, and I just lost him.  He was already

21   grooming both of us at that time, and I was so caught up with

22   losing my daddy that it's almost like I just handed K.N. over

23   to him because he had built up our trust and built up my trust,

24   and I'm not a trusting person anyways.  But he saw that

25   opportunity coming, he saw my daddy was going to die, and he
```

1    jumped in like the buzzard that he is.

2           And I've beat myself up.  I lost my will to live, my

3    will to thrive.  You can't tell by looking at me, but I am a

4    spinal cord injury walker, and the last 17 or 18 years of my

5    life have been a fight, a constant fight, for everything I

6    have, and it still is today.

7           Because of me giving up my will to live, I am still --

8    I am going to wound care every week for a wound that will not

9    heal because my nutrition was depleted and my body is not

10   absorbing anything, and I blame all of this on the actions of

11   this man that destroyed our family.

12          But you know what?  I decided to live.  I decided to

13   live because I've got kids and I've got grandkids and I've got

14   a man that loves me, and I decided to live so that I could see

15   that man die alone because that's what he deserves, to die

16   alone in a cold, hard concrete cell.

17          And I don't know if he did this to any other children,

18   girls or boys, before this.  I feel like he did because he was

19   such an expert at it, because I'm an educated person, and for

20   him to just walk in and do this, it just still -- my mind just

21   still just spins of how someone can walk into your house and

22   convince you and act like he cares about you and your family

23   and your issues and -- how does somebody do that?  I can't --

24   their heart is the devil is the only thing I can attribute this

25   to.

1        I'm okay.  I've got more to say.

2        I want it to be known K.N. has been in counseling,

3   D.N. has been in counseling, I've been in counseling.  K.N. has

4   had to be hospitalized twice in the last 14 months for

5   psychiatric evaluations and suicidal -- she was having suicidal

6   tendencies.  She had to be put in a hospital away from her

7   family where they wouldn't even let us visit her or see her

8   while she was in there.

9        But after being in the hospital, I guess it did help

10  her to see some things and to help her to understand and have

11  some coping skills and be able to put the blame where the blame

12  should be, is upon the grown man's back, the grown man that

13  made decisions to destroy other people's lives with no care or

14  no concern in the world of what he was doing to anyone.  And I

15  know that she's going to continue to heal, and she's going to

16  thrive again because if I can do it, she can do it.

17       And many of the things that I wanted to say, you-all

18  know that they're facts, that she was moved away from Oklahoma

19  where she had all of her friends, teachers, community, and we

20  moved her up here to get her away from him, and you-all know

21  this.  And he still came up here.

22       So what I mostly want to say is that I want you to

23  know that you are here and you are going to spend the rest of

24  your life, I hope, in prison because of your own decisions, no

25  one else's.  Don't blame a child.  That just makes you a

coward.  And at one point in time, I trusted you with her life.
I do not know how you can live with yourself.

THE DEFENDANT:  I'm sorry.

G.F.:  As you should be.

Yes, I've got a couple more things.

Back to the point of you being here because of your
own decisions, I want to -- I want everybody in this room to
know -- they probably already know -- the night that the police
found you-all in the car at the library, whose idea was it to
call Momo?  I am Momo.  In case you all don't know, that's my
grandma name.  And he said, "Call your Momo.  Have her tell the
police officer that you have permission to be here with me."

After everything he put us through, then he has the
audacity to have my own granddaughter that was ripped away from
me call me and ask me to lie for him?  Oh, therefore, I want to
see you die in a cold, hard prison cell, and I want to see the
same things done to you that were done to my daughter and my
granddaughter.

You taught her to lie.  You taught her to be sneaky.
You showed her a side of the world that I protected her from
her entire life.  I protected her from the likes of you-all.
Instead, you showed her everything there was to know of that
dark, seedy, nasty life you choose to live.

You know, as long as -- I'm one of those people -- my
mother will tell you I'm one of those people you want on your

side, not at your back, because you will be hated for the rest

of your life, and there will be a target on your back and your

forehead the rest of your life, not from me, but there's people

that did not show up here today because they knew they could

not control themselves.

I wanted to come and kill you whenever I was waiting

for them to come and arrest you.  I did things that I didn't

think I would ever do.  I followed you to work.  I followed you

home from work every day.  I watched you because I didn't want

you running off from your responsibilities.  But I was smart

enough to tell a friend to come get all my guns because still

looking at you right this minute, I would love to put a bullet

right between your eyes and watch the blood run into your

mouth.

That's all I have to say.

THE COURT:  Thank you.

Additional victim impact statements?

MR. KERNDT:  One moment, Your Honor.

Your Honor, the child victim would like to be heard.

THE COURT:  Yes.

K.N.:  I have experienced forgetness [sic], fear of

being alone, and --

THE COURT:  Ma'am, before you start, I understand that

it's very important for you to say what you have come here to

say today, and I need to be able to hear it and understand it.

1    So because of that, I know you've got something to read, and

2    that's fine, just make sure that you read it slowly and speak

3    into the microphone, please.

4              K.N.:  Okay.

5              THE COURT:  Thank you.

6              K.N.:  I have experienced forgetness, fear of being

7    alone, school stress, home stress, and suicide thoughts.  And I

8    would like you to know I'm scared to be judged by other people

9    because of my past.  I would like to see him go to prison, and

10   I hope he can go to hell, and I am sorry for all the other

11   girls who he did this to.  And I would like him to know I came

12   along ways without him.

13             THE COURT:  Thank you.

14             Mr. Kerndt, does that conclude the victim impact

15   statements?

16             MR. KERNDT:  It does, Your Honor.

17             THE COURT:  Thank you.

18             Mr. Graeve, on behalf of the defense?

19             MR. GRAEVE:  Thank you, Your Honor.

20             This is clearly an emotional case, and we have heard

21   from the victim and her family members about it.  I and

22   Mr. Raiburn sympathize with everything that they're going

23   through.

24             The significant impact that has resulted due to

25   Mr. Raiburn's decision to plead cannot be underestimated in a

1   case like this.  It is significant that there was no trial

2   before a jury that would have required these individuals to

3   come and testify, and the psychological impact that that could

4   have had on them would have been significant, and Mr. Raiburn's

5   decision to plead guilty should receive special consideration

6   by this Court, exceptional consideration by this Court, to that

7   effect.

8         The victim and her family, because there's no trial

9   and with the opportunity to proceed with this sentencing

10  hearing with the pleadings that have all been filed under seal,

11  I hope that they can truly begin to heal, and I think that's

12  Mr. Raiburn's hope as well.

13        As the victim's grandmother was speaking, I believe

14  the Court heard Mr. Raiburn say "I'm sorry."  And there is no

15  taking back what has happened, but I would like to draw the

16  Court to a few things that I have already mentioned in my

17  sentencing brief on behalf of Mr. Raiburn.

18        Up until this point, from all of the evidence that's

19  been presented to the Court and from all the evidence that I

20  have seen, it appears that Mr. Raiburn led a fairly

21  conventional life.  He had no criminal history.  He lived in

22  rural Oklahoma.  He obtained his GED after dropping out of high

23  school.  He became a city manager for the City of Caddo, and he

24  helped to run that city for about 13 years.  By all evidence

25  that anyone from the outside world could have seen, it seemed

he was living a conventional, normal life.

There is no evidence that what has happened in this case has ever happened to any other victim. It's important that the Court be aware of what's not in this case. There is no history of predatory or monster-like activity by Mr. Raiburn. There's no distribution of anything that was sent by the victim to Mr. Raiburn. There was no sending that out to anybody. The evidence suggests that any images that were created during the course of this offense have been collected by the Government and not distributed to other individuals.

The hope is that the victim in this case and her involvement is not going to be a public thing that other people become aware of, and it's important that the Court recognize that point because this is not a production case where the individual has sent out or distributed any images that then become part of the illicit market.

This case, as it's clear from the presentence report and as the Court has already discussed, involved an illicit relationship. We have submitted Exhibit A --

THE COURT: I don't believe I used the term "illicit."

MR. GRAEVE: It is an improper, illegal relationship.

THE COURT: Thank you.

MR. GRAEVE: And we submitted Exhibit A to provide some additional context so the Court is aware that not all of these messages were sexually explicit.

The question for the Court is what is a sufficient
sentence in this case, and the defense's position is that a
sentence closer to the mandatory minimum would be sufficient
but not greater than necessary.  The issue for this Court is
just how long is necessary, and 30 years seems more than what
is sufficient in this case.  Thank you.

THE COURT:  Thank you, Mr. Graeve.

Mr. Raiburn, now is the time during the hearing where
you have the opportunity to speak.  You do not have to say
anything, but if you would like to, the Court will consider it.

Is there anything you would like to say, sir?

THE DEFENDANT:  Yes, Your Honor.

I'm not a sexual predator or a monster or anything
like that.  I'm very sorry for the hurt that this has caused
this family.  I did try very hard to earn their respect and
trust, and I'm sorry that I lost it.  I'm very sorry for any
kind of harmful things I've done to them.

THE COURT:  Thank you, sir.

On behalf of the United States?

MR. KERNDT:  May I, Your Honor?

THE COURT:  I would prefer you argue with your mask
on.  I did want you to read something without your mask on
because you looked down, but I'm confident you can argue facing
up.

MR. KERNDT:  Your Honor, this offense is incredibly

serious.  It's among the most serious offenses that this Court

presides over.  The defendant targeted a vulnerable 12-year-old

child.  The child was a friend of his son's, and he repeatedly

abused that child.

When suspicions arose and Oklahoma Child Protective

Services investigated, the defendant denied.  The child was

moved states away, but the defendant was not deterred.  He

pursued her, secretly traveling to Iowa multiple times with the

intent to have sex with the child.  He smuggled the child a

cell phone, texting all the time text messages sexually

explicit, excruciatingly explicit, in nature, soliciting the

child to produce child pornography for his own gratification.

He sent grossly obscene images back to the child.

The frequency and breathtakingly explicit nature of

these communications are laid out in the presentence report,

and I know full well this Court has pored over them.  The

defendant was involved in plans for the child to run away.  A

38-year-old man didn't say, No, we're not going to do that.

The defense talked about the defendant pleading guilty

and he should get a -- quote, receive exceptional consideration

for pleading guilty and not putting the child through a trial,

saving her the psychological impact.

The Court should not overweigh that.  The Court should

not grant exceptional consideration for that simple fact.  The

fact of the matter is the defendant pled guilty because it was

in his own self-interest.  The impact of the plea agreement,

which the Court noted at the onset of this hearing, is very

significant, and it was eventually offered by the

United States.  The defendant was capped at 30 years.  Had the

defendant gone to trial, he would have been 15 to life.  His

guidelines would have been life.  If he had pled to more than

one count of production, his guidelines would be life, and he

would not be capped at 30.

He pled guilty because it's in his own self-interest,

not to save this child out of the charity of his heart.  He had

no choice.  The evidence was overwhelming.

The fact of the matter is the defendant is a predator,

and he pursued this child over and over and over and over and

over again in Oklahoma and in Iowa.  The damage he caused, as

the Court saw starkly today, is incalculable.  The child that

he abused was 12 years old at the time.  And I had to really

take a step back.  Twelve years old, just getting out of sixth

grade.

And it pointedly struck me as I sat next to the child

victim giving her statement this morning when she reached into

her mouth and pulled out her retainers to hand back to her

family so she could speak more clearly for this Court.  This is

a child, a child whose innocence has been robbed from her and

her family destroyed, and I hope and pray that her and her

family are as resilient as I know they can be because the

1   damage is deep.

2        I'm asking this Court to sentence the defendant to the

3   statutory maximum in light of all the circumstances and the

4   significant benefit that he received under the plea agreement.

5   And I'm going to leave the Court today with the defendant's own

6   words, and there were a lot to pick out and pick through in

7   this presentence report, but I think these words ring true.

8        In paragraph 37 the defendant said to the child,

9   quote, The only way they are going to keep me away from you is

10  by locking me up.  Other than that, I will always find my way

11  to you no matter how far it is.

12       The defendant should be sentenced to 360 months in

13  prison.

14       THE COURT:  Thank you, Mr. Kerndt.

15       Before I begin the discussion of the factors to be

16  considered, one of the factors you know that I must consider is

17  restitution.  The Government has provided some documents

18  establishing losses to the victim in a financial nature.  I

19  have seen those and reviewed those documents.  The defense

20  indicated in its sentencing memorandum that the discussions

21  were ongoing as to restitution.

22       Has there been an agreement reached as to the

23  applicable restitution in this case?

24       MR. KERNDT:  Yes.  The defense is not objecting to the

25  $6,471.95 laid out in paragraph 64.

1          MR. GRAEVE:  That's correct, Your Honor.

2          THE COURT:  Thank you.

3          The Court is required to consider a number of factors

4     before deciding on an appropriate sentence in this and every

5     case, and those factors are set forth in Title 18, United

6     States Code, Section 3553(a).  They include the history and

7     characteristics of the defendant and the nature and

8     circumstances of the offense.

9          The Court must also consider the need for the sentence

10    imposed to reflect the seriousness of the offense, to promote

11    respect for the law, to provide just punishment, and to

12    adequately deter future criminal conduct, both for this

13    defendant and for others who might contemplate committing such

14    an offense in the future.

15         The Court has to consider the need to protect the

16    public and to provide the defendant with any educational

17    training or other needs in the most effective manner.

18         The Court has to consider the sentencing guidelines

19    and the advice they provide as well as the need to avoid

20    unwarranted sentencing disparities among defendants with

21    similar records who have been found guilty of similar conduct,

22    and the Court must also consider the need to provide

23    restitution.

24         I may not speak about each one of the statutory

25    considerations specifically in articulating the reasoning for

1 my sentence, but in determining the appropriate sentence to

2 impose, I have considered each and every one of them.

3 Ultimately, the sentence the Court imposes must be

4 sufficient but not greater than necessary to serve the purposes

5 of sentencing.

6 The sentence here must be driven by the seriousness of

7 the offense. This is an offense that entailed the ongoing

8 abuse of a child. Government's Exhibit 1 is notable for a

9 number of reasons. The first is that it demonstrates

10 specifically the date and time the defendant started, quote,

11 dating this child, and the date is before the child's 13th

12 birthday.

13 It also demonstrates that the child cried the first

14 time this defendant sexually assaulted her. He describes it as

15 making love, but we know that a 38-year-old man cannot make

16 love to a 12-year-old girl. It goes on to celebrate the fact

17 that he sexually assaulted her twice the first day. "Yeah," he

18 says.

19 And that is just at the outset of this ongoing

20 criminal conduct, this relevant conduct to the eventual

21 production of child pornography and live streaming of sexual

22 contact with a child.

23 Defense Exhibit A is not mitigating in any way. The

24 fact that this 38-year-old man used terms of endearment to

25 continue to manipulate this child in order to get her to engage

in sexual contact with him is not mitigating. The fact that he bought her a vape pen is not mitigating. It demonstrates the complete misunderstanding of the severity of this offense.

Oftentimes when there are young criminal defendants in this court, it's advocated to the judge that there should be some consideration given to the fact that this defendant's mind is not fully developed, and that's true. But it's also true that a 12-year-old victim does not yet have a fully developed brain either, and that victim must be viewed in the context of her age and development and susceptibility to influences by someone who called himself "Daddy" to her.

When the concerned citizen -- and whoever that was, it is a demonstration of the need for everyone in the community to work together to protect children. When that concerned citizen who called and brought law enforcement in Des Moines to intervene with this defendant, his approach was to tell her to pretend he is her dad, and he is old enough to be her father.

This is a very serious offense, and one of the most aggravating aspects of this offense is that the family intervened to attempt to thwart the ongoing sexual abuse of this child. They took responsibility and moved her states away to try to protect her from the defendant. Despite the fact that the defendant had lied about the fact that there was, in fact, a sexual contact between these two individuals, the family didn't take any risks. They said, We're going to move

her even though he says he didn't do it. And yet the defendant
was not deterred, and deterrence is a specifically enumerated
factor that this Court has to consider in determining the
appropriate sentence to impose.

The Court acknowledges that this defendant has no
criminal history. He is in relatively good health. The
probation office reports in paragraph 106 that he's in overall
good health. He had been employed in the community in what
appears to be a prosocial way, and the Court considers those
facts.

Those mitigating facts are insufficient to overcome
the overwhelming need to protect the public, promote respect
for the law, to reflect the seriousness of the offense, and to
deter this defendant.

The defendant knew what he was facing. In paragraph
41 he specifies in a text on August 20, "Are you trying to get
me to go to prison? Everybody is blowing my phone up.
Including the cops about my Facebook. It [sic] the district
attorney office sees that I am history baby. Thirty years.
Please delete my whole account."

So here he is trying to ensnare the victim in
additional criminal conduct: Destruction of evidence, hiding
the nature of their relationship from law enforcement, and he
acknowledges that he's facing 30 years.

Paragraph 21, again, he acknowledges the illegality

and the potential penalties associated with his conduct.
"Please don't let anyone find any of these messages.  They will
lock me up for the rest of my life."

Counsel, do you know of any legal reason why the Court
should not impose sentence at this time?

MR. KERNDT:  No, Your Honor.

MR. GRAEVE:  No, Your Honor.

THE COURT:  Then based upon the Court's review of the
criteria set forth in Title 18, United States Code, Section
3553(a), and circumstances of this case and for the reasons I
have explained, it is the judgment of the Court that the
defendant, Edward Lee Raiburn, is sentenced to 360 months of
imprisonment or 30 years of imprisonment.

That sentence is within the advisory guideline range
and is imposed for the reasons I have previously stated.  I
recognize that I am sentencing someone who pleaded guilty to
the statutory maximum.  It is not something I do lightly.

The defense's request that the Court give exceptional
consideration to his guilty plea is noted.  However, this
defendant was charged in a seven-count indictment.  Each of
those separate crimes carried significant penalties that can be
imposed consecutively or back to back.  I cannot imagine if
this defendant went to trial that there would not be a higher
sentence imposed than the statutory maximum that I'm imposing
right now.

1    Additionally, the Court recognizes that the plea

2 agreement reached by the parties capped the Court's ability to

3 impose a higher sentence, and even if the defendant had pleaded

4 guilty, I can't imagine a circumstance that I would not have

5 imposed separate penalties for the separate offenses that he

6 would have pled guilty to had he pled guilty to more than one

7 count.  This is an egregious crime that caused severe harm to a

8 victim and her family, and the sentence reflects that.

9    The Court does not impose a fine, finding that the

10 defendant does not have the reasonable ability to pay a fine

11 and any finances that are available should be used for the

12 payment of restitution.

13    I do order restitution in the amount set forth in the

14 presentence investigation report and agreed to by the defense

15 and to be paid to the victim in the amount of $6,471.95.

16    The Court recognizes that that money does not make

17 this victim whole.  No one can do that.  But I am heartened by

18 the fact that the victim has had the opportunity to receive

19 counseling, has the support of her family, and had the

20 opportunity to be heard here today.

21    The Court also imposes the $100 special assessment due

22 and payable immediately without interest to the United States

23 Clerk of Court for the Southern District of Iowa.  The Court

24 also waives interest on restitution as well.

25    In addition to the term of imprisonment, the Court

will also impose a term of supervised release.  The Court will
impose a seven-year term of supervised release.

Within 72 hours of your release from the custody of
the Bureau of Prisons, Mr. Raiburn, you'll be required to
report in person to the probation office in the district to
which you are released.

While on supervised release, you shall not commit
another state, federal, or local crime; you shall not
unlawfully possess a controlled substance; and you shall not
unlawfully use a controlled substance.

You'll be subject to at least one drug test within 15
days of your release and at least two more thereafter.  You'll
be required to cooperate in the collection of DNA.

You are a felon.  You cannot possess a firearm,
destructive device, or ammunition either during your term of
supervised release or any time thereafter.

You'll be required to abide by the standard conditions
of supervised release, and those are set forth by the
United States Sentencing Commission, and they will be included
in the written judgment that will be entered here today.

Additionally, you'll be required to comply with the
special conditions of supervised release that were proposed by
the probation office in the presentence investigation report
and were unobjected to by the defense.

I'll briefly summarize those for you now.  Those are

included in part G.  I'm going to summarize them, but you

should understand that they will be implemented and enforced in

full as written.

First, in paragraph 145, you must submit to a gambling

assessment and participate in any treatment that's recommended.

I'm going to skip down to paragraph 147.  You must pay

restitution in the amount I have just stated, that 6,000-some

dollars.  In order to help you make those payments, you'll be

required to participate in a payment plan.  You'll also be

required to participate in Treasury offsets or other programs

to ensure that any available funds are directed towards the

victim.

In furtherance of making sure your restitution is

paid, you'll be prohibited from soliciting for or incurring any

further debt without first obtaining the permission of the U.S.

Probation Office.  You must provide complete access to your

financial information to the probation office in order to,

again, make sure that you're paying any money available to the

victim.

You must not have any contact, direct, personal, mail,

or otherwise, with any child you know or reasonably should know

to be under the age of 18.  You also must not contact the

victim in this case or her family without the prior permission

of the U.S. Probation Office.  That contact, again, is direct,

indirect, virtual, mail, or otherwise or through a third party.

1          Do you understand what I mean by "not contact," sir?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  You must not view or possess any visual

4    depiction of sexually explicit conduct, and you must not go

5    into any businesses where sexually explicit conduct is the

6    primary product for purchase or viewing.

7          You must comply with all sex offender registration

8    laws for the state in which you reside.  You must also comply

9    with the Sex Offender Registration and Notification Act, and

10   that requires you to register in any place where you reside,

11   work, or are a student or were convicted of a qualifying

12   offense.

13         You must not access the Internet or possess

14   Internet-capable devices without the prior approval of the

15   probation office.  If you are approved for such use, you must

16   permit third-party disclosure to any employer or potential

17   employer concerning your computer use.

18         If you're approved for computer use, you must submit

19   your devices to unannounced inspections and possible removal

20   for more thorough inspection, and you must allow for the

21   installation of monitoring software.  You must notify third

22   parties of that monitoring condition if they are also using

23   those devices.  And you'll be subject to a search condition as

24   well.

25         Let's talk about paragraphs 146 and 146a.  Are you

1  objecting to both of those paragraphs?

2       MR. GRAEVE:  Your Honor, I think 146 as written is

3  okay.  Our concern is that 146a seems to give the probation

4  office the ability to require Mr. Raiburn submit to polygraph

5  testing without any requirement of supervision, without any

6  limitations on that.  And we believe that the Court should

7  amend it as we've suggested in our memorandum or supplemental

8  memorandum that was filed Monday.

9       THE COURT:  You had no objection to the originally

10  proposed 146; correct?

11       MR. GRAEVE:  No.

12       THE COURT:  Mr. Kerndt, what's the Government's

13  position?

14       MR. KERNDT:  I don't believe that reasonable suspicion

15  needs to be necessary in this type of circumstance for this

16  type of offender in order to do polygraph testing.

17       THE COURT:  Mr. Graeve's concern is that if it's

18  reasonable suspicion that you traveled -- you know, you quit

19  your job and didn't tell the probation office, he's concerned

20  that the probation office would be engaged in polygraph

21  examinations beyond what is part of the sex offender treatment

22  protocols.

23       MR. KERNDT:  I understand.  I defer to the Court to

24  tailor it as appropriate to meet the needs here, Your Honor.

25       MR. GRAEVE:  And our request, Your Honor, would be

1  that the Court adopt the paragraph that's in the draft report
2  and not this amended one.
3  THE COURT:  I have not had the opportunity to visit
4  with Probation about why the change occurred and what the
5  intention is.  I understand your objection.  In light of that,
6  I will go back to the 146 that was originally proposed, and I
7  think it's at Document 39.
8  I don't know what the revision was or what prompted
9  it, but I will research that further.  The condition as it
10  reads in 146 as it was originally proposed means that the
11  defendant must participate in sex offender treatment
12  programming, to include psychological testing and polygraph
13  examinations and the remainder of those as set forth in the
14  original paragraph 146.
15  You understand that, Mr. Raiburn?
16  THE DEFENDANT:  Yes, Your Honor.
17  THE COURT:  Both the length of the term of supervision
18  and the conditions imposed are based upon an individualized and
19  particularized assessment of this defendant's supervision needs
20  after reviewing and considering all of the relevant factors
21  under Title 18, United States Code, Sections 3553(a) and
22  3563(b).
23  Mr. Graeve, any requests as to designation or
24  programming?
25  MR. GRAEVE:  Yes, Your Honor.  As to designation, as

1   the Court knows, Mr. Raiburn is from rural Oklahoma, and we

2   would request designation at facilities closer to Oklahoma,

3   particularly Seagoville or Texarkana, which are within closer

4   driving distance to his family members.

5          Barring that, though, Mr. Raiburn has noted that there

6   are some programming at Sandstone that he would like to

7   participate in, so he would request an alternative placement at

8   Sandstone.

9          In addition, for programming, Mr. Raiburn has some

10  experience with auto mechanic repair and auto body work, and we

11  would request that he be -- or that the Court recommend that he

12  participate in further programming related to that field.

13         THE COURT:  In terms of the designation for the

14  location of Mr. Raiburn's detention, the Court would suggest

15  the recommendation to the Bureau of Prisons be that the

16  defendant be designated to a facility in close proximity to the

17  state of Iowa, either Seagoville or Texarkana.

18         MR. GRAEVE:  I think the Court meant Oklahoma.

19         THE COURT:  What did I say?

20         MR. GRAEVE:  Iowa.

21         THE COURT:  I meant Oklahoma.  I apologize.  Thank

22  you.  That the defendant be designated in close proximity to

23  the state of Oklahoma in either Seagoville or Texarkana or, if

24  unavailable, to FCI Sandstone.

25         Is that acceptable to the defense?

1          MR. GRAEVE:  That is acceptable, Your Honor.

2          THE COURT:  The Court will also recommend that the

3    defendant be afforded the opportunity to work in vocational

4    training in auto mechanic repair or auto body work.

5          Any other recommendations?

6          MR. GRAEVE:  No, Your Honor.  That's it.

7          THE COURT:  Forfeiture?

8          MR. KERNDT:  Yes, Your Honor.  We would ask that the

9    Court order forfeiture consistent with the preliminary order

10   filed at Docket 43.

11         THE COURT:  My recollection is that that is both

12   phones?

13         MR. KERNDT:  Correct.

14         THE COURT:  And that will be written into the final

15   judgment.  I believe that was agreed to in the plea agreement

16   as well.

17         MR. GRAEVE:  Correct, Your Honor.

18         THE COURT:  Counts to be dismissed?

19         MR. KERNDT:  Yes, Your Honor.  We move to dismiss

20   Count 1 and Counts 3 through 7.

21         THE COURT:  And that motion is granted at this time.

22         MR. KERNDT:  Your Honor, one correction, if I may.

23         With respect to the restitution, the Court ordered

24   restitution to the victim.  We would ask that it be ordered to

25   the Iowa Crime Victim Compensation Program.

1          THE COURT:  I apologize.  Thank you.  And that's

2     because the Iowa Crime Victim Compensation Program has already

3     incurred those costs?

4          MR. KERNDT:  Correct.

5          THE COURT:  Yes.  And the judgment will reflect that

6     appropriate designation.

7          Mr. Raiburn, you do have the right to appeal the

8     sentence that I have just imposed.  If you wish to pursue an

9     appeal, you must file a written notice of appeal within 14 days

10    of the entry of judgment.

11         Do you understand the time line for filing a notice of

12    appeal, sir?

13         THE DEFENDANT:  Yes.

14         THE COURT:  In addition, if you wish to pursue an

15    appeal and you cannot afford an attorney, one can be appointed

16    to represent you.  You can also have transcripts of this or any

17    other relevant proceedings made at no cost to you in

18    furtherance of your appeal if you qualify financially.

19         THE DEFENDANT:  Yes.

20         THE COURT:  Counsel, any matters that I failed to

21    address?

22         MR. KERNDT:  No, Your Honor.

23         MR. GRAEVE:  No, Your Honor.

24         THE COURT:  Anything further on behalf of the

25    Government?

1        MR. KERNDT:  No, Your Honor.

2        THE COURT:  On behalf of the defense?

3        MR. GRAEVE:  No, Your Honor.

4        THE COURT:  The defendant is committed to the custody

5  of the United States Marshal Service for transportation to the

6  designated Bureau of Prisons facility.

7        To the victim and the victim's family, I wish you all

8  the best.  Thank you for your participation in the hearing.

9  All victims have the right to be heard in court, and the reason

10  why that statute exists is so that the Court can understand the

11  impact that crimes have on individuals and their families, and

12  I thank you for participating in this aspect of our criminal

13  justice system.  I wish you well.

14        Mr. Raiburn, I also wish you well.  I wish you the

15  best moving forward, sir.

16        THE DEFENDANT:  Thank you very much.

17        THE COURT:  That will conclude the hearing.

18        (The sentencing concluded at 11:48 a.m.)

19

20

21

22

23

24

25

1          CERTIFICATE

2          I, Chelsey Wheeler, a Certified Shorthand Reporter of

3    the State of Iowa and Federal Official Realtime Court Reporter

4    in and for the United States District Court for the Southern

5    District of Iowa, do hereby certify that the foregoing is a

6    true and correct copy of the transcript originally filed with

7    the Clerk of Court on November 25, 2020, and incorporating the

8    redactions of personal identifiers in accordance with Judicial

9    Conference policy as requested by attorney of record Andrew

10   Graeve.

11         DATED this 10th day of December, 2020.

12

13              /s/*Chelsey Wheeler*

14              Chelsey Wheeler
                Certified Shorthand Reporter
15